# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-01325-SCT

*HERITAGE HUNTER KNOLL, LLC*

*v.*

*LAMAR COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/22/2021 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| TRIAL COURT ATTORNEYS: | COREY D. HINSHAW |
| | JOSEPH G. BALADI |
| | JESSICA S. MALONE |
| | KATIE CAMILLE BERRY |
| | WILLIAM ROBERT ALLEN |
| | PERRY WAYNE PHILLIPS |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOSEPH G. BALADI |
| | COREY D. HINSHAW |
| | KATIE B. LYONS |
| ATTORNEYS FOR APPELLEE: | WILLIAM R. ALLEN |
| | KATELYN A. RILEY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 02/09/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Heritage Hunter Knoll, LLC (Heritage), appeals the circuit court's dismissal of its appeal for a lack of jurisdiction. Because Heritage's appeal is untimely as to the amendment by the Lamar County Board of Supervisors (Board) to the waste ordinance but timely as to the Board's denial of Heritage's variance requests, the circuit court's judgment of dismissal is affirmed in part and reversed and remanded in part.

## FACTS AND PROCEDURAL HISTORY

¶2.     Lamar County is a political subdivision governed by the Board. On July 2, 2018, the Board amended the Unauthorized Dumping and Litter Ordinance (waste ordinance) to discontinue the county's garbage collection service to multifamily residences, duplex developments, apartment complexes, and commercial properties. Under the amendment, "[a]ll multi-family residences, duplex developments, apartment complexes, and commercial properties shall contract with a private waste disposal service for garbage pickup." Notably, the amendment advised that "[a]ny citizen who [wa]s affected or aggrieved by this Ordinance may apply to the Lamar County Board of Supervisors (at its regularly scheduled meetings) for a Variance to the terms, provisions and applications of this Ordinance."

¶3.     Heritage, a limited liability company, owns three properties in Lamar County: Hunter Lane, Heritage Cove, and Knoll Cutoff. Heritage received notice of the Board's amendment to the waste ordinance by letter dated July 23, 2018.

¶4.     On August 6, 2018, the Board passed a second amendment to the waste ordinance. The second amendment stated, in pertinent part, as follows:

> For clarification purposes of the Unauthorized Dumping and Litter Ordinance dated March 7, 2016 and the Amendment dated July 2, 2018, said Ordinance and Amendment both shall include and incorporate the terms and provisions of Mississippi Code Annotated Section 19-5-21 wherein Lamar County may levy an ad valorem taxes pursuant to said Mississippi Code Annotated 19-5-21 on all taxable property within the area served by the county garbage or rubbish collection or disposal system.

¶5.     In August 2018, Heritage appeared before the Board to request a variance for its three

2

properties. In September 2018,[1] the Board approved Heritage's variance request for the Knoll Cutoff property, but it denied the variance requests for the other two properties, Hunter Lane and Heritage Cove. Heritage did not appeal the Board's amendment to the waste ordinance or the Board's denial of its variance requests.

¶6. In January 2019, the county implemented the amended waste ordinance, discontinuing the county's garbage collection service to multifamily residences, duplex developments, apartment complexes, and commercial properties.

¶7. On February 1, 2019, Heritage filed suit in federal court claiming that the Board's amendment to the waste ordinance was unlawful and that it violated Heritage's constitutional rights. The parties conducted discovery, including the depositions of those Board members who were in office at the time of the amendment. A settlement conference was later held during which Heritage agreed to dismiss its federal suit without prejudice and to resubmit its two variance requests to the Board.

¶8. Pursuant to the federal court settlement, in August 2020, Heritage resubmitted its variance requests for the Heritage Cove and Hunter Lane properties to the Board (2020 variance requests). On September 8, 2020, the Board denied both of Heritage's 2020 variance requests.

¶9. Heritage filed a notice of appeal in the circuit court on September 18, 2020. In its notice of appeal, Heritage asserted it was "challeng[ing] the Board's authority . . . to amend

---

[1] The deposition transcript from one of the Board members indicates that the Board's decision regarding the variance requests was memorialized in its September 20, 2018 minutes.

the ordinance to deny waste collection and disposal services" and "appealing [the Board's] decision to deny [the 2020] variances to the [waste] [o]rdinance." Heritage also refiled its original lawsuit in federal court.

¶10. The circuit court heard oral arguments, and on November 22, 2021, it entered its "Findings of Fact, Conclusion[s] of Law, and Judgment of Dismissal." The circuit court found Heritage's appeal was filed "after the expiration of the 10-day deadline for appeals found in [Mississippi Code Section] 11-51-75 [(Rev. 2019)]" and therefore dismissed the appeal for a lack of jurisdiction. The circuit court also found Heritage had engaged in claim-splitting and dismissed "th[e] action [in order to] allow the federal court to resolve the dispute between [Heritage] and Lamar County."

¶11. Heritage timely filed a notice of appeal in this Court from the circuit court's judgment of dismissal. On appeal, Heritage argues: (1) the circuit court erred by dismissing the appeal for a lack of jurisdiction; (2) the Board's decision to amend the waste ordinance was arbitrary and capricious, beyond the Board's authority, in violation of Mississippi law, and in violation of Heritage's statutory and constitutional rights; (3) the circuit court erred by failing to rule on the appeal regarding the Board's denial of Heritage's 2020 variance requests[2]; (4) the circuit court erred by failing to find that the Board's denial of Heritage's 2020 variance requests was arbitrary and capricious; (5) the circuit court erred by allowing the Board to hold a special session to retroactively concoct reasons for its denial of Heritage's 2020 variance requests; and (6) the circuit court erred by holding Heritage engaged in claim-

---

[2] This issue is discussed under Issue I.

4

splitting.

## STANDARD OF REVIEW

¶12.    "The standard of review of an order of a Board of Supervisors is the same standard which applies in appeals from the decisions of administrative agencies." ***Baker v. Bd. of Supervisors of Panola Cnty.***, 113 So. 3d 1266, 1268 (Miss. Ct. App. 2013) (internal quotation marks omitted) (quoting ***A & F Props., LLC v. Madison Cnty. Bd. of Supervisors***, 933 So. 2d 296, 299-300 (Miss. 2006)).   "The Board's decision will only be overturned if the Board's order 'was unsupported by substantial evidence; was arbitrary or capricious; was beyond the [Board's] scope or powers; or violated the constitutional or statutory rights of the aggrieved party.'" ***Id.*** (alteration in original) (quoting ***Ladner v. Harrison Cnty. Bd. of Supervisors***, 793 So. 2d 637, 638 (Miss. 2001)).   "However, questions of law will be reviewed de novo." ***Id.*** (citing ***A & F Props.***, 933 So. 2d at 300).

## DISCUSSION

I.      *Whether the circuit court erred by dismissing the appeal for a*
        *lack of jurisdiction.*

¶13.    Mississippi Code Section 11-51-75 governs appeals to the circuit court from decisions by the board of supervisors.   Miss. Code Ann. § 11-51-75 (Rev. 2019).   Section 11-51-75 provides in pertinent part,

> Any person aggrieved by a judgment or decision of the board of supervisors of a county, or the governing authority of a municipality, may appeal the judgment or decision to the circuit court of the county in which the board of supervisors is the governing body or in which the municipality is located. A written notice of appeal to the circuit court must be filed with the circuit clerk within ten (10) days from the date at which session of the board of supervisors or the governing authority of the municipality rendered the

5

judgment or decision. Upon filing, a copy of the notice of appeal must be delivered to the president of the board of supervisors or to the mayor or city clerk of the municipality and, if applicable, to any party who was a petitioner before the board of supervisors or the governing authority of the municipality.

Miss. Code Ann. § 11-51-75.

¶14. Section 11-51-75's ten-day time limit "is both mandatory and jurisdictional." *City of Jackson v. Jordan*, 202 So. 3d 199, 203 (Miss. 2016) (quoting *McPhail v. City of Lumberton*, 832 So. 2d 489, 492 (Miss. 2002)). "Thence, when an appeal of a decision rendered by municipal authorities is not perfected within the statutory time constraint of ten days, no jurisdiction is conferred upon the appellate court, i.e., the circuit court." *Id.* (quoting *McPhail*, 832 So. 2d at 492).

¶15. The circuit court found Heritage's appeal was untimely under Section 11-51-75, and it dismissed the appeal for a lack of jurisdiction. But Heritage's appeal to the circuit court included two separate issues: (1) the Board's amendment to the waste ordinance and (2) the Board's denial of Heritage's 2020 variance requests. This Court separately addresses these issues.

### A. Board's Amendment to the Waste Ordinance

¶16. Heritage first asserts that because the Board's amendment to the waste ordinance was unlawful, Section 11-51-75's ten-day time limit does not apply. This Court disagrees.

¶17. In *Newell v. Jones County*, the plaintiffs took issue with the board's decision to enter into a contract for garbage collection. *Newell v. Jones Cnty.*, 731 So. 2d 580, 582 (Miss. 1999). The trial court found that "the proper avenue for appeal was [Section] 11-51-75" and dismissed the appeal as untimely. *Id.* at 581, 583. On appeal to this Court, plaintiffs argued

"that where the decision of a Board of Supervisors is claimed to be unlawful the procedural requirements of [Section] 11-51-75 do not apply." *Id.* at 582. This Court disagreed and held that "*any act* of a county or municipality leaving a party aggrieved is appealable under [Section] 11-51-75 where . . . all issues of the controversy are finally disposed of." *Id.* (second alteration in original) (quoting *S. Cent. Turf, Inc. v. City of Jackson*, 526 So. 2d 558, 561 (Miss. 1988)). We found that because the "[p]laintiffs . . . failed to file any challenge to the . . . Board's action within the ten . . . days prescribed by [Section] 11-51-75[,] . . . the action was properly dismissed as untimely." *Id.* at 583.

¶18. Here, like the plaintiffs in *Newell*, Heritage claims the ten-day time limit in Section 11-51-75 does not apply because the Board's actions in amending the waste ordinance were unlawful. But as in *Newell*, "*any act* of a county or municipality leaving a party aggrieved is appealable under [Section] 11-51-75 where . . . all issues of the controversy are finally disposed of." *Id.* at 582 (second alteration in original) (quoting *S. Cent. Turf, Inc.*, 526 So. 2d at 561).

¶19. The record reflects that "all issues of the controversy [were] finally disposed of" in September 2018 when the Board denied two of Heritage's requested variances. Indeed, Heritage received notice of the Board's amendment to the waste ordinance by letter dated July 23, 2018. The letter advised that "[a]ny citizen who [wa]s affected or aggrieved by" the Board's amendment to the waste ordinance "may apply to the [Board] for a [v]ariance." Based on these instructions, Heritage submitted three variance requests in August 2018. In September 2018, the Board denied two of Heritage's variance requests. But Heritage did not

appeal the Board's "act," i.e., its amendment to the waste ordinance, under Section 11-51-75. *Id.* at 582 (quoting *S. Cent. Turf, Inc.*, 526 So. 2d at 561). Instead, Heritage filed suit in federal court more than four months later and argued that the Board's amendment to the waste ordinance was unlawful, arbitrary, capricious, and in violation of Heritage's constitutional rights. Although Heritage filed suit in federal court, it failed to timely pursue an appeal in state court as required by Section 11-51-75.

¶20. Heritage further asserts that the ten-day time limit in Section 11-51-75 does not apply because Heritage was not given advance notice of the amendment or an opportunity to be heard. In support, Heritage relies on multiple cases. But as the circuit court properly noted, in each of those cases, notice was required. Specifically, the circuit court stated,

> In each of those court decisions, a governmental body rendered a decision adverse to an individual's vested property interest. It was the property interest that entitled the individual to notice. *See Tippah Cnty. v. LeRose*, 283 So. 3d 149 (Miss. 2019) (decision to run public road through LeRose's property); *City of Jackson v. Jordan*, 202 So. 3d 199 (Miss. 2016) (condemnation and demolition of Jordan's property); *Cook v. Bd. of Supervisors of Lowndes Cnty.*, 571 So. 2d 932, 933 (Miss. 1990) (board's decision to not renew Cook's contract for ambulance services); *Williams v. Walley*, 295 So. 2d 286 (Miss. 1974) (termination of Walley's lease of county property); *Lee v. City of Byram*, 269 So. 3d 1194, 1196-97 (Miss. Ct. App. 2018) (rezoning Lee's property); *Scarborough v. City of Petal*, 60 So. 3d 193 (Miss. Ct. App. 2010) (demolition of Scarborough's building). This Court is not aware of any caselaw or statutes holding one has a property interest in garbage collection and disposal. Without such a property interest, there is no requirement for notice.

¶21. Heritage asserts it has a vested property interest in the provision of garbage collection services because the Board's amendment directly affects Heritage's property. In support, Heritage relies on *Tucker v. Hinds County*, 558 So. 2d 869 (Miss. 1990). But *Tucker*

8

involved utility services, not garbage collection services. *Id.* at 871. In *Tucker*, the county disconnected Tucker's electrical power to his house. *Id.* Tucker filed suit alleging that the county's actions "had amounted to a taking of his property and property rights without due process, and were intentional, willful and wanton." *Id.* This Court found that "a subscriber has a 'property' interest in continued [utility] service" noting, "utility service has become almost a necessity for safety and comfort in modern-day life." *Id.* at 873-74.

¶22. Here, unlike in *Tucker*, no such property interest exists in garbage collection. Unlike in *Tucker* and the previously referenced cases relied on by Heritage, the Board's amendment to the waste ordinance did not amount to a taking of Heritage's property.

¶23. Regardless, the record reflects that Heritage received notice of the Board's decision to amend the waste ordinance on July 23, 2018, and Heritage later appeared before the Board in August 2018. Despite this notice, Heritage did not appeal the Board's amendment to the waste ordinance. Instead, Heritage filed suit in federal court more than four months later.

¶24. Heritage failed to file any challenge to the Board's amendment to the waste ordinance within the ten days prescribed by Section 11-51-75. Consequently, the circuit court did not err by dismissing the appeal for lack of jurisdiction as to this issue.

B. *Board's Denial of Heritage's 2020 Variance Requests*

¶25. Heritage argues the circuit court erred by failing to address its appeal regarding the Board's denial of its 2020 variance requests. This Court agrees. While Heritage's appeal was *untimely* as to the Board's amendment to the waste ordinance, Heritage's appeal regarding the Board's denial of its 2020 variance requests was *timely* filed.

9

¶26. The record reflects that in August 2020, Heritage "resubmitted its variance requests for reconsideration" as to its Hunter Lane and Heritage Cove properties. The two variance requests were denied by the Board on September 8, 2020. Heritage filed its notice of appeal in the circuit court on September 18, 2020, within ten days of the Board's decision, as required by Section 11-51-75. In its notice of appeal, Heritage asserted two issues: the Board's amendment to the waste ordinance and the Board's denial of Heritage's 2020 variance requests. But the circuit court only addressed the Board's amendment to the waste ordinance. It did not address or consider the Board's denial of Heritage's 2020 variance requests. Because Heritage timely appealed the Board's denial of its 2020 variance requests, the circuit court erred by failing to address the issue.

¶27. Importantly, the fact that Heritage resubmitted its variance requests to the Board as part of a federal court settlement does not affect the timeliness of the waste-ordinance issue or allow Heritage to reargue the waste-ordinance issue. Heritage was aware of the Board's amendment to the waste ordinance in 2018. Heritage failed to timely challenge that issue under Section 11-51-75. As a result, Heritage cannot now reassert that issue simply because the parties agreed, as part of a federal court settlement, to resubmit the variance requests to the Board.

¶28. Because Heritage timely appealed the Board's denial of its 2020 variance requests, the circuit court erred by failing to consider and address the issue. The circuit court's judgment is reversed, and the case is remanded to the circuit court for a full hearing and ruling on the merits regarding the Board's denial of Heritage's 2020 variance requests.

10

> II. *Whether the Board's decision to amend the waste ordinance was arbitrary and capricious, beyond the Board's authority, and in violation of Heritage's statutory and constitutional rights.*

¶29. Because Heritage failed to timely appeal the Board's decision to amend the waste ordinance, the circuit court lacked jurisdiction to address this issue. Miss. Code Ann. § 11-51-75; *Newell*, 731 So. 2d at 582.

> III. *Whether the circuit court erred by failing to find that the Board's denial of Heritage's 2020 variance requests was arbitrary and capricious.*

> IV. *Whether the circuit court erred by allowing the Board to hold a special session to retroactively concoct reasons for its denial of Heritage's 2020 variance requests.*

¶30. Because Heritage timely filed its notice of appeal regarding the Board's denial of its 2020 variance requests, the circuit court erred by failing to consider these issues. On remand, the circuit court shall conduct a full hearing regarding the Board's denial of Heritage's 2020 variance requests, including whether the Board's denial of the variance requests was arbitrary and capricious and whether the Board improperly held a special session to retroactively concoct reasons for its denial of the variance requests.

> V. *Whether the circuit court erred by holding Heritage engaged in claim-splitting.*

¶31. Heritage argues the circuit court erred by holding there was improper claim-splitting. This Court agrees.

¶32. "Claim-splitting has long been prohibited under Mississippi law and occurs when a plaintiff attempts to bring a duplicative action involving claims arising from a single body of operative facts against the same defendants." *Carpenter v. Kenneth Thompson Builder,*

11

*Inc.*, 186 So. 3d 820, 824 (Miss. 2014). For claim-splitting, "the test is 'whether the first suit, assuming it were final, would preclude the second suit. This makes sense, given that the claim-splitting rule exists to allow [trial] courts to manage their docket[s] and dispense with duplicative litigation.'" *Id.* at 825 (alterations in original) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1218-19 (10th Cir. 2011)).

¶33. Here, Heritage filed a notice of appeal regarding the Board's amendment to the waste ordinance and the Board's denial of Heritage's 2020 variance requests. Heritage argued that the Board's actions were unlawful, arbitrary, capricious, beyond the Board's authority, and in violation of Heritage's constitutional rights. Specifically, Heritage argued that the Board's amendment to the waste ordinance is in direct violation of Mississippi Code Section 19-5-17 (Rev. 2012), which requires the board of any county to provide for the collection and disposal of garbage. Heritage further argued that the Board's continued ad valorem tax on its properties despite the Board's denial of garbage collection is "inequitable." Heritage claimed that the Board's actions violate its due process rights under "Section 1 of the 14th Amendment to the Constitution."

¶34. In its separate federal court action, Heritage asserted the following six causes of action:

> Count I: 42 USC § 1983. Lamar County has deprived [Heritage] of property rights without due process.
>
> Count II: 42 USC § 1983. Lamar County has denied [Heritage] of equal protection of laws by treating [Heritage] different than other similarly situated property owners.
>
> Count III: Violation of Fair Housing Act

12

Count IV: Violation of Miss. Code § 11-41-1. Writ of mandamus from circuit court for Lamar County to perform garbage disposal.

Count V: Violation of Miss. Const. Art. III § 14. Ad valorem tax deprives [Heritage] of property rights without due process.

Count VI: Violation of Miss. Const. Art. III § 14. [Heritage] deprived of equal protection by Lamar County treating it differently than other similarly situated property owners.

¶35. The circuit court found that Heritage "split its claims between the federal court and [circuit c]ourt" and explained that although Heritage "d[id] not apply the same labels to its claims in the instant case, Counts I, II, V, and VI of the federal complaint [we]re all incorporated in the issues presented to [the circuit c]ourt." But while some of Heritage's claims asserted in its federal case are incorporated in the issues presented in this case, Heritage's appeal in this case does not preclude its federal court action. *See Carpenter*, 186 So. 3d at 825 (For claim-splitting, "the test is 'whether the first suit, assuming it were final, would preclude the second suit.'" (quoting *Katz*, 655 F.3d at 1218-19)).

¶36. In *Falco Lime, Inc. v. Mayor and Alderman of Vicksburg*, this Court considered whether a plaintiff was entitled to a trial de novo under Section 11-51-75 when it "filed both a bill of exceptions and an ordinary complaint" regarding the same decision. *Falco Lime, Inc. v. Mayor & Alderman of Vicksburg*, 836 So. 2d 711, 717 (Miss. 2002). The Court held,

> Where the circuit court finds before it a § 11-51-75 appeal that "arises out of a common nucleus of operative fact" with claims that would ordinarily be resolved by a trial de novo, the better procedure is to function first in its appellate capacity and hear the § 11-51-75 appeal based on the bill of exceptions, and then proceed to the other claims (and the evidence related to them) only if the resolution of the appeal leaves them unresolved. In this manner, the requirements of the statute are met, and the circuit court avoids being presented with extraneous material that might compromise its duty to

13

reach its appellate judgment solely on the bill of exceptions before it.

*Id.* at 720.

¶37.    In *MEC, Inc. v. Lowndes County Board of Supervisors*, the United States Court of

Appeals for the Fifth Circuit discussed this Court's decision in *Falco Lime*.  *MEC, Inc. v.*

*Lowndes Cnty. Bd. of Supervisors*, 759 Fed. Appx. 331, 338 (5th Cir. 2019).  Citing *Falco*

*Lime*, the Fifth Circuit explained,

> Sometimes, a party would file both a bill of exceptions, *i.e.*, an appeal, and a
> separate "ordinary complaint" in the Circuit Court regarding the same
> underlying facts. [*Falco Lime*, 836 So. 2d] at 717, 720. In such instances, the
> Mississippi Supreme Court has explained that "[w]here the circuit court finds
> before it a § 11-51-75 appeal that arises out of a common nucleus of operative
> fact with claims that would ordinarily be resolved by a trial de novo, the better
> procedure is to function first in its appellate capacity and hear the § 11-51-75
> appeal based on the bill of exceptions, and then proceed to the other claims
> (and the evidence related to them) only if the resolution of the appeal leaves
> them unresolved." *Id.* at 720. In other words, after a party completes the §
> 11-51-75 appellate process, he may then present additional evidence on other
> claims if they remain unresolved. *Id.*

*MEC*, 759 Fed. Appx. at 338.

¶38.    In *MEC*, "MEC filed a bill of exceptions appealing the Board's decision." *Id.*  "The

bill of exceptions asserted that the Board's restaurant exemption denial was not based on

substantial evidence and was arbitrary and capricious." *Id.*  "It further contended that the

Board's decision amounted to an unlawful taking and also violated MEC's substantive due

process rights." *Id.*  The court noted that *Falco Lime* "would have permitted [MEC] to file

both its appellate bill of exceptions to allege the Board decision violated its constitutional

rights and also a separate 42 U.S.C. § 1983 action seeking damages and other relief for the

claimed constitutional violations." *MEC*, 759 F. Appx. at 338.  And the court rejected the

14

argument that ***Falco Lime*** "effectively placed conditions on the vindication of MEC's federal right to file a § 1983 claim." ***MEC***, 759 F. Appx. at 339 (internal quotation marks omitted). The court explained that the ***Falco Lime*** procedure

> is not a rule designed to minimize governmental liability; it is rather meant to ensure that typical rules of appellate procedure such as confining evidence to the record on appeal are followed. ***Falco Lime***, 836 So. 2d at 720. Further, it does not require a plaintiff to request relief from a state official in the first instance—at least not regarding § 1983 claims. Rather, ***Falco Lime*** explains that, after hearing an § 11-51-75 appeal, a Mississippi court should proceed to hear new claims, including . . . § 1983 claims.

***MEC***, 759 F. Appx. at 339. We agree with the Fifth Circuit's analysis.

¶39. Here, as in ***MEC***, Heritage filed a notice of appeal from the Board's decision, and it asserted that the Board's amendment to the waste ordinance was arbitrary and capricious, beyond the Board's scope and power, and in violation of Heritage's statutory and constitutional rights. Heritage further asserted that the Board's denial of its 2020 variance requests was arbitrary and capricious. Under ***Falco Lime*** and ***MEC***, Heritage, while pursuing its notice of appeal, is not precluded from asserting independent claims arising from the Board's decision. *See also **Mathews v. City of Booneville, Miss.***, No. 1:19-CV-137-DMB-DAS, 2020 WL 2615912, at *5 (N.D. Miss. May 22, 2020) ("[Section] 11-51-75 represents the exclusive remedy for *appealing* decisions of a municipal board. However, none of the cited authority supports the City's position that a litigant pursuing a § 11-51-75 appeal may not assert independent claims arising from the challenged decision." (citation omitted)). Accordingly, the circuit court erred by finding that Heritage engaged in claim-splitting and by dismissing the appeal on that basis.

15

¶40. The circuit court's dismissal of the case based on claim-splitting is reversed and remanded but only as to Heritage's appeal regarding the Board's denial of its 2020 variance requests. Because Heritage's appeal regarding the Board's amendment to the waste ordinance was properly dismissed as untimely, it remains dismissed and is not affected by this Court's ruling on claim-splitting.

## CONCLUSION

¶41. Heritage's appeal regarding the Board's amendment to the waste ordinance was untimely filed. As a result, the circuit court's dismissal of the appeal is affirmed as to the Board's amendment to the waste ordinance.

¶42. Heritage's appeal regarding the Board's denial of its 2020 variance requests was timely filed. As a result, the circuit court's dismissal of the appeal is reversed and remanded as to the Board's denial of Heritage's 2020 variance requests. On remand, the circuit court shall conduct a full hearing on the merits regarding the Board's denial of Heritage's 2020 variance requests.

¶43. Heritage did not engage in claim-splitting. The circuit court's dismissal of the case based on claim-splitting is reversed; the case is remanded as to Heritage's appeal regarding the Board's denial of its 2020 variance requests but is affirmed as to Heritage's appeal regarding the Board's amendment to the waste ordinance.

¶44. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**